IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Maria Keith and Muhammed Karadavut, | § § § | |
| Plaintiffs, | § § | Case No: |
| v. | § § § | |
| Cortland Management, LLC, Genuine Data Services, LLC, LexisNexis Risk Data Retrieval Services, LLC and RealPage, Inc. a/k/a LeasingDesk Screening, | § § § § § § | DEMAND FOR JURY TRIAL |
| Defendants. | § § | |

## COMPLAINT

Plaintiffs Maria Keith and Muhammed Karadavut ("*Plaintiffs*"), by and through the undersigned counsel, complain, state and allege against Cortland Management, LLC ("*Cortland*"), Genuine Data Services, LLC ("*GDS*"), LexisNexis Risk Data Retrieval Services, LLC ("*LexisNexis*"), and RealPage, Inc. a/k/a LeasingDesk Screening ("*LeasingDesk"*) (GDS, LexisNexis and LeasingDesk may be referred to as "*CRA Defendants*") (Cortland and CRA Defendants may be referred to as "*Defendants*") as follows:

## INTRODUCTION

1. This action seeks to recover for violations of the Fair Credit Reporting Act (the "*FCRA*"), 15 U.S.C. § 1681 *et seq.*

2. This action seeks relief against CRA Defendants for reporting inaccurate and/or misleading information on Plaintiffs' consumer reports in violation of 15 U.S.C. § 1681e(b); and for LeasingDesk's failure to conduct a reasonable investigation into Plaintiffs' disputes in violation of § 1681i(a).

3. Plaintiffs also seek relief against Cortland for failing to provide Plaintiff Muhammed Karadavut with an adverse action notice as required under 1681(m).

4. Plaintiffs seek an Order enjoining Defendants' injurious conduct and to recover *inter alia*, statutory damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendants' erroneous reporting of inaccurate

1

information in Plaintiffs' consumer background reports.

5. As a result of Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiffs have sustained actual damages including, but not limited to: humiliation; embarrassment; emotional and mental pain due to the anxiety and stress of having to find a place to live; unfair adverse action; unfair adverse treatment; lost time and effort in disputing the inaccurate information; lost time and effort in seeking housing; lost fees and expenses by submitting the applications with Cortland Management and The Kathryn; anxiety in finding new housing; denial of the use and enjoyment of an apartment; the dissemination of this inaccurate data to third party prospective landlords and property managers.

6. Plaintiffs seek to recover monetary damages for Defendants' violations of the FCRA and to have an Order issued by this Court enjoining Defendants from persisting in their violative behaviors.

## JURISDICTION AND VENUE

7. Jurisdiction of the Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

9. Plaintiff Maria Keith is an adult who is a citizen of the State of Texas residing in Dallas County.

10. Plaintiff Maria Keith is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11. Plaintiff Muhammed Karadavut is an adult who is a citizen of the State of Texas residing in Dallas County.

12. Plaintiff Muhammed Karadavut is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendant Cortland is a "person" as that term is defined by 15 U.S.C. § 1681a(b).

14. Defendant Cortland is a limited liability company engaged in the business of operating apartment complexes in the state of Texas and has a principal place of business located at 14675 Dallas Parkway, Suite 550, Dallas Texas 75254.

15. Defendant LeasingDesk is a corporation formed in Delaware and has a principal place of business located in Texas at 2201 Lakeside Blvd, Richardson, TX 75082-4305.

16. Defendant LeasingDesk is a consumer reporting agency (hereinafter "*CRA*"), as defined under 15 U.S.C. § 1681a(f), that regularly conducts business in this judicial district.

17. Defendant LeasingDesk by contractual agreement, disseminates consumer background reports for remuneration to third parties.

18. Defendant LeasingDesk is a corporation formed in Delaware and has a principal place of business located in Texas at 2201 Lakeside Blvd, Richardson, TX 75082-4305.

19. Defendant GDS is a CRA as defined under 15 U.S.C. § 1681a(f), that regularly conducts business in this judicial district.

20. Defendant GDS by contractual agreement, disseminates consumer background reports for remuneration to third parties.

21. Defendant GDS is a limited liability company formed in Delaware and has a principal place of business located in Texas at 12770 Coit Road, Suite 1150, Dallas, Texas 75251.

22. Defendant GDS may be served through its registered agent in Texas at 10601 Clarence Dr. Suite. 250 Frisco, Texas 75033.

23. Defendant LexisNexis is a CRA, as defined under 15 U.S.C. § 1681a(f), that regularly conducts business in this judicial district.

24. Defendant LexisNexis by contractual agreement, disseminates consumer background reports for remuneration to third parties.

25. Defendant LexisNexis is a corporation formed in Georgia and has a principal place of business located in Texas at 1000 Alderman Dr. Alpharetta, Georgia, 30005.

## SUBSTANTIVE ALLEGATIONS OF FCRA

26. Congress enacted § 1681 *et seq.* of Title 15 of the United States Code, § 1681(a) of which states as follows:

> (1) The banking system is dependent upon fair ***and accurate*** credit reporting. ***Inaccurate credit reports directly impair the efficiency of the banking system***, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

3

(4) There is a ***need to insure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

(Emphases added).

27. FCRA mandates that CRAs adhere to the following duties: (i) to assure maximum possible accuracy of information when preparing consumer reports and to set up reasonable policies procedures to maintain compliance with this minimum reporting standard; and (ii) to reinvestigate the facts and circumstances surrounding a dispute by consumers and to appropriately and timely correct any inaccuracies, including by quickly notifying the furnisher and any other parties in the distribution chain of the disputed inaccuracies.

28. CRAs compile, maintain, and report information concerning the creditworthiness, credit-standing, credit capacity, character, and general reputation of consumers, including Plaintiffs. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one CRA Defendants prepared in Plaintiffs' name.

29. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit. In the parlance of the FCRA, tenant screening reports are "consumer reports". Providers of tenant screening reports, like CRA Defendants, are "consumer reporting agencies." 15 U.S.C. §§1681a(d) and (f).

30. Given that CRA Defendants are in the business of selling tenant screening reports, CRA Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

31. Plaintiffs have a legally protected interest in the CRA Defendants fulfilling their duties under FCRA so that the consumer information being furnished and reported by them is maintained fairly, with the maximum levels of confidentiality, accuracy, and relevancy.

32. Plaintiffs' injury is particularized and actual and is directly traceable to Defendants' conduct. The deprivation of Plaintiffs' rights will be redressed by a favorable decision herein.

**FACTUAL ALLEGATIONS**

33. On or around April 14, 2024, Plaintiffs Maria Keith and Muhammed Karadavut submitted a joint lease application online for an apartment with Cortland Management in Dallas, Texas.

34. Upon information and belief, Cortland hired LeasingDesk to prepare a consumer report on Maria Keith and Muhammed Karadavut to determine their eligibility to lease a property from it.

35. Alternatively, Cortland provided its tenant screening requirements to LeasingDesk and asked it to handle the evaluation of the joint application as its agent and/or contractor.

36. When preparing its report on the Plaintiffs, LeasingDesk requested and obtained supplemental data from GDS and LexisNexis concerning any potential criminal, suits and judgement records relating to Maria Keith.

37. GDS and LexisNexis, in response to LeasingDesk's inquiry, obtained information concerning criminal court records pertaining to "Maria Guadalupe Garcia-Benitez" and "Ann Marie Garcia".

38. In relation to these public records, GDS included the following:
    a. Inaccurate Offender Information belonging to Maria Guadalupe Garcia-Benitez.
    b. Inaccurate Criminal conviction for Possession Controlled Substance in Schedule III.

39. In relation to these public records, LexisNexis included the following:
    a. An inaccurate eviction judgement from Oklahoma belonging to Ann Marie Garcia.

40. The court records including criminal convictions and eviction judgements reflect heavily on an individual's character and general reputation, specifically for tenant screening purposes.

41. GDS and LexisNexis furnished the data to LeasingDesk for use in a report which would be used to evaluate the application to lease an apartment from Cortland.

42. Plaintiff Maria Keith can confirm that her complete and full name is Maria Keith and she never previously used the names "Maria Guadalupe Garcia-Benitez" or "Ann Marie Garcia" and was unfamiliar with who these individuals were.

43. Maria Keith does not have any prior or current court actions relating to any of the offenses listed above and has never been charged with or been the subject of any criminal

convictions or eviction proceedings otherwise.

44. Plaintiff Maria Keith's name, address, date of birth and social security number is unique to her and should not be mixed or reported as another.

45. On April 15, 2024, Plaintiff Maria Keith received an email from Cortland informing her that it was unable to move forward with the joint rental application for her and Plaintiff Mohammad Karadavut (the "*Adverse Action Notice*").

46. Following the Adverse Action Notice to Maria Keith, and at all times thereafter Plaintiff Mohammed Karadavut did not receive any notice from Cortland or LeasingDesk regarding his denied application as required under FCRA.

47. Unlike Plaintiff Maria Keith, Plaintiff Muhammed Karadavut did not receive any summary of his rights from Cortland under the FCRA.

48. Following the earlier email from Cortland, Plaintiff Maria Keith received an email from LeasingDesk informing her that her application had not been approved based on the following reason(s):

- Rental history unsatisfactory or insufficient
- Criminal and other public records unsatisfactory
- Fraud alert

49. Unlike Plaintiff Maria Keith, Plaintiff Muhammed Karadavut did not receive a summary of his rights from LeasingDesk under the FCRA.

50. Similar to Plaintiff Maria Keith, Plaintiff Muhammed Karadavut was interested in the outcome of his application and was affected by the false and misleading information furnished by CRA Defendants.

51. Similar to Plaintiff Maria Keith, Plaintiff Muhammed Karadavut was interested in the outcome of his application and was entitled to an adverse action notice from Cortland or LeasingDesk.

52. As the background report was inaccurate and misleading, Plaintiff Maria Keith decided to dispute the inaccurate information directly to LeasingDesk addressing the criminal conviction and evictions as inaccurate and false. Plaintiff Maria Keith also provided LeasingDesk with her personal identifying information, so that LeasingDesk would not mix or report her file as another.

53. On April 29, 2024, in response to Plaintiff Maria Keith's FCRA dispute letter,

LeasingDesk informed Plaintiffs that it had notified the sources of the disputed information and completed its own investigation which had revealed that the disputed information was "inaccurate, incomplete, or cannot be verified". In summary of the result, LeasingDesk also provided the following statement:

> "**The eviction filings and judgments information included in the report provided to Cortland Galleria apartment community on 4/14/2024 was derived from public records from the OKLAHOMA DISTRICT COURT. Due to the information discovered during our investigation, we have determined that this record does not belong to you and the record will be removed from your file**."

(Emphases added).

54. In reliance of the response from LeasingDesk, Plaintiff Maria Keith decided to pursue another apartment with non-party The Kathryn.

55. On May 1, 2024, Plaintiff Maria Keith submitted an application with The Kathryn and paid applicable fees for a background check.

56. Upon information and belief, The Kathryn hired LeasingDesk to prepare a consumer report on Maria Keith to determine her eligibility to lease a property from it.

57. Alternatively, The Kathryn provided its tenant screening requirements to LeasingDesk and asked it to handle the evaluation of the joint application as its agent and/or contractor.

58. On May 1, 2024, Plaintiff Maria Keith received an email from The Kathryn informing her that her application was denied due to a judgement eviction.

59. The Kathryn also provided her with a copy of the report for her review and a summary of her rights under FCRA.

60. Upon review of the report, Plaintiff Maria Keith discovered that LeasingDesk and LexisNexis had furnished to The Kathryn that she was a defendant in an eviction proceeding using the name Ann Marie Garcia.

61. As Plaintiff's' full and correct name is Maria Keith, she was confused that her consumer file was once again mixed or used with the name Ann Marie Garcia. Plaintiff Maria Keith has never used or been associated with that name other than the April 17, 2024, background report disseminated by LexisNexis and LeasingDesk.

62. As Plaintiff Maria Keith has never had a judgement for eviction taken against her,

she was confused that her file was mixed or used with another and disseminated to The Kathryn.

63. On May 3, 2024, Plaintiff Maria Keith received an email from LeasingDesk advising her that her rental application was denied due to "Rental history unsatisfactory or insufficient".

64. However, since Plaintiff Maria Keith already disputed the inaccurate data within Defendants LeasingDesk and LexisNexis, she was unsure why or how this information was included within her consumer background report and shared to The Kathryn as part of her rental application.

65. As such, CRA Defendants failed to practice reasonable procedures to assure maximum possible accuracy.

66. As such, CRA Defendants failed to maintain reasonable procedures to assure maximum possible accuracy.

67. CRA Defendants failed to include and maintain practices and reasonable procedures that would prevent multiple alias names, addresses, convictions and judgement evictions that did not belong to Plaintiff from being furnished on her consumer file.

68. As a result of Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiffs have sustained actual damages including, but not limited to: humiliation; embarrassment; emotional and mental pain due to the anxiety and stress of the finding a place to live; unfair adverse action; unfair adverse treatment; lost time and effort in disputing the inaccurate information; lost time and effort in seeking housing; lost fees and expenses by submitting the application with Cortland and The Kathryn; anxiety in finding new housing; denial of the use and enjoyment of an apartment; the dissemination of this inaccurate data to third party prospective landlords and property managers.

## COUNT I
**CRA Defendants' Violations of the FCRA, 15 U.S.C. § 1681e(b)**

69. Plaintiffs repeats and realleges the foregoing paragraphs as if fully restated at length herein below.

70. CRA Defendants systemically violated 15 U.S.C. § 1681e(b) by failing to adhere to, maintain and/or establish reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' consumer reports and consumer files they published and maintained concerning Plaintiffs.

71. CRA Defendants violated 15 U.S.C. 1681e(b) when they failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as CRA Defendants' procedures resulted in the inclusion of demonstrably false information in a consumer report sold regarding Plaintiff Maria Keith, in that she was convicted of being in possession of a controlled substance of schedule III in Oklahoma and that she had a judgement eviction against her.

72. CRA Defendants could readily incorporate technological and procedural adjustments to prevent egregious errors similar to mixing information between individuals using the name-only technique to prevent costs and time.

73. The Consumer Financial Protection Bureau's ("CFPB") issued an Advisory Opinion on November 4, 2021 See https://www.consumerfinance.gov/rules-policy/final-rules/fair-credit-reporting-name-only-matching-procedures/ that name-only matching in preparing consumer reports is not a reasonable procedure to assure maximum possible accuracy under the FCRA.

74. Upon information and belief, CRA Defendants used inadequate matching techniques such as name-only matching resulting in inaccurate consumer reports of the Plaintiff.

75. As such CRA Defendants' actions were willful and intentional, or, alternatively, performed with reckless disregard for their duties under the FCRA to provide reports with maximum possible accuracy.

76. As a result of CRA Defendants' violations of 15 U.S.C. §§ 1681e(b), Plaintiffs suffered statutory and actual damages as described herein and are entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

77. For the foregoing reasons, CRA Defendants violated 15 U.S.C. § 1681e(b) and are liable to Plaintiffs for actual damages, statutory damages, punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT II**
**LexisNexis and LeasingDesk's Violations of the FCRA, 15 U.S.C. § 1681i *et seq.***

78. Plaintiff Maria Keith repeats and realleges the foregoing paragraphs as if same were fully restated herein below.

79. LexisNexis and LeasingDesk violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was accurate and record

the current status of the disputed information or delete the items from Plaintiff' Maria Keith's consumer report.

80. LexisNexis and LeasingDesking violated 15 U.S.C. § 1681i(a)(1) by relying upon only a cursory review of basic information and deferring entirely upon and merely parroting information received in their own consumer file and other third person(s) of Plaintiff's public and non-public information.

81. LexisNexis and LeasingDesking violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide public or non-public person(s) all of the relevant information regarding Plaintiff Maria Keith and her dispute.

82. LexisNexis and LeasingDesking violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider <u>all</u> relevant information submitted by Plaintiffs regarding the dispute.

83. LexisNexis and LeasingDesking violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff Maria Keith's consumer file or correct the inaccurate information upon reinvestigation.

84. As a result of LexisNexis and LeasingDesking's violations of 15 U.S.C. § 1681, Plaintiff Maria Keith suffered actual damages which have been further described above in the statement of facts.

85. LexisNexis and LeasingDesking's violations were willful because they had knowledge of the issue after receiving a detailed dispute letter and/or exhibited a reckless disregard for the information provided in that dispute, rendering LexisNexis and LeasingDesking individually liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

86. In the alternative, LexisNexis and LeasingDesking's were negligent, which entitles Plaintiff Maria Keith to recovery under 15 U.S.C. § 1681o.

87. For the foregoing reasons, LexisNexis and LeasingDesking violated 15 U.S.C. § 1681i and are liable to Plaintiff Maria Keith for actual damages, statutory damages, punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III
**Cortland's Violations of the FCRA, 15 U.S.C. § 1681(m)**

88. Plaintiff Muhammed Karadavut repeats and realleges the foregoing paragraphs as

if same were fully restated herein below.

89. Cortland violated 15 U.S.C. § 1681(m) by failing to provide a notice of its adverse decision or a statement of related rights under FCRA to Plaintiff Muhammed Karadavut following the adverse action.

90. Cortland violated 15 U.S.C. § 1681(m) when it obtained the consumer reports in relation to Plaintiff Muhammed Karadavut's lease application as a co-applicant and by taking adverse action against him (based in whole or in part of the consumer report) without first providing him with a notice of its adverse decision.

91. Cortland was aware of its obligations under FCRA, in that, a landlord (Agent, CRA or user of a consumer report) that turns down a consumer on the basis of a consumer report must give notice of the adverse action.

92. Cortland should have been aware of the Federal Trade Commission's November 5, 1998, advisory opinion to Splitz relating to adverse action notices for co-applicants, which states:

> **"A denial of a co-applicant's rental application is clearly adverse to the interests of the co-applicant. In the context of a transaction involving a consumer who is a co-signer or a guarantor of another consumer's rental application, the primary and the co-signer or guarantor of another consumer's rental application, the primary applicant and the co-signer/guarantor may step into the shoes of the primary applicant, assuming personal liability for the default. This constitutes a substantial and, in fact, legally recognized "interest" in the rental transaction. The rejection is "adverse" to the interest because, by voluntarily assuming that liability, the co-signer/guarantor seeks to ensure that the primary applicant receives housing, as in the case of a parent who co-signs a rental application submitted by a son or daughter."**

(Emphases added).

93. Despite its systematic use of consumer reports as part of the application process, and it taking of adverse action based in whole or in part on such information, Cortland did not have in place or follow procedures to provide a notice of its adverse decisions against co-applicants.

94. The above-alleged actions and omission of Cortland violated the FCRA, 15 U.S.C. § 1681(m). Plaintiff Muhammed Karadavut is entitled to attorneys' fees and cost pursuant to 15 U.S.C. § 1681n and 1681o.

95. As a result of Cortland's violations of 15 U.S.C. § 1681, Plaintiff Muhammed

Karadavut suffered actual damages which have been further described above in the statement of facts.

96. Cortland's violations were willful because they had knowledge of the issue after receiving a detailed dispute letter and/or exhibited a reckless disregard for the information provided in that dispute, rendering Cortland individually liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

97. In the alternative, Cortland was negligent, which entitles Plaintiff Muhammed Karadavut to recovery under 15 U.S.C. § 1681o.

98. For the foregoing reasons, Cortland violated 15 U.S.C. § 1681(m) and is liable to Plaintiff Muhammed Karadavut for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to § 1681n and § 1681o.

## COUNT IV
### LeasingDesk's Violations of the FCRA, 15 U.S.C. § 1681(m)

99. Plaintiff Muhammed Karadavut repeats and realleges the foregoing paragraphs as if same were fully restated herein below.

100. LeasingDesk violated 15 U.S.C. § 1681(m) by failing to provide a notice of its adverse decision or a statement of related rights under FCRA to Plaintiff Muhammed Karadavut following the adverse action.

101. LeasingDesk violated 15 U.S.C. § 1681(m) when it obtained the consumer reports in relation to Plaintiff Muhammed Karadavut's lease application as a co-applicant and by taking adverse action (based in whole or in part of the consumer report) without first providing him with a notice of its adverse decision.

102. LeasingDesk was aware of its obligations under FCRA, in that, a landlord (Agent, CRA or user of a consumer report) that turns down a consumer on the basis of a consumer report must give notice of the adverse action.

103. LeasingDesk should have been aware of the Federal Trade Commission's November 5, 1998, advisory opinion to Spritz relating to adverse action notices for co-applicants, which states:

> **"A denial of a co-applicant's rental application is clearly adverse to the interests of the co-applicant. In the context of a transaction involving a consumer who is a co-signer or a guarantor of another consumer's rental application, the primary and the co-signer or guarantor of another consumer's**

12

> **rental application, the primary applicant and the co-signer/guarantor may step into the shoes of the primary applicant, assuming personal liability for the default. This constitutes a substantial and, in fact, legally recognized "interest" in the rental transaction. The rejection is "adverse" to the interest because, by voluntarily assuming that liability, the co-signer/guarantor seeks to ensure that the primary applicant receives housing, as in the case of a parent who so-signs a rental application submitted by a son or daughter."**

(Emphases added).

104. Despite its systematic use of consumer reports as part of the rental application process, and its taking of adverse action based in whole or in part on such information, LeasingDesk did not have in place or follow procedures to provide a notice of its adverse decisions against co-applicants.

105. The above-alleged actions and omission of LeasingDesk violated the FCRA, U.S.C. § 1681(m) and Plaintiff Muhammed Karadavut is entitled to attorneys' fees and cost pursuant to 15 U.S.C. § 1681n and § 1681o.

106. As a result of CRA Defendants' violations of 15 U.S.C. § 1681, Plaintiff Muhammed Karadavut suffered actual damages which have been further described above in the statement of facts.

107. LeasingDesk's violations were willful because they had knowledge of the issue after receiving a detailed dispute letter and/or exhibited a reckless disregard for the information provided in that dispute, rendering LeasingDesk individually liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

108. In the alternative, LeasingDesk was negligent, which entitles Plaintiffs to recovery under 15 U.S.C. § 1681o.

109. For the foregoing reasons, LeasingDesk violated 15 U.S.C. § 1681(m) and is liable to Plaintiff Muhammed Karadavut for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

110. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues triable by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment against Defendants, as follows:

a  Adjudging that Defendants' actions violated the FCRA;

b  Enjoining Defendants from persisting in violative behaviors and requiring Defendants to correct the data at issue in Plaintiffs' consumer report;

c  Granting Plaintiffs actual damages against Defendants pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

d  Granting Plaintiffs statutory damages against Defendants pursuant to 15 U.S.C. § 1681n(a)(1)(A);

e  Granting Plaintiffs punitive damages against Defendants pursuant to 15 U.S.C. § 1681n(a)(2);

f  Granting Plaintiffs costs and reasonable attorneys' fees against the Defendants pursuant to 15 U.S.C. §§ 1681n(c) and 1681o(b);

g  Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law; and

h  Such other and further relief as the Court determines is just and proper.

DATED: June 11, 2024

**SANDERS LAW GROUP**

By: */s Craig B. Sanders*
Craig B. Sanders, Esq.
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: csanders@sanderslaw.group
Office: (516) 203-7600
Fax: (516) 282-7878
*Attorneys for Plaintiffs*
Our File No.: 130069